**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **DWAYNE ANTHONY SCOTT** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-736-BAJ-RLB** |
| **COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION** | |

### NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1)(C), you have **14 days** from date of receipt of this notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on February 7, 2014.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **DWAYNE ANTHONY SCOTT** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-736-BAJ-RLB** |
| **COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION** | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Dwayne Anthony Scott ("Plaintiff"), seeks judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") pursuant to 42 U.S.C. § 405(g) denying Plaintiff's application for a period of disability and disability insurance benefits "under Title II and Part A of Title XVIII of the Social Security Act." (Tr. 116).[1] For the reasons assigned below, the Court recommends the decision of the Commissioner be **AFFIRMED** and Plaintiff's appeal **DISMISSED with prejudice**.

**I.   PROCEDURAL HISTORY**

On September 16, 2010 Plaintiff filed an application for disability insurance benefits (Tr. 10, 36, 116-117) alleging disability as of October 13, 2008 based on: "crushed" hands, amputated fingers and damaged nerves on the left and right hangs, high blood pressure, carpal tunnel syndrome, ulnar neuropathy and depression (Tr. 10, 36, 116). Plaintiff's application was

---

[1] References to documents filed in this case are designated by "(R. Doc. [docket entry number(s)] at [page number(s)])". Reference to the record of administrative proceedings filed in this case is designated by "(Tr. [page number(s)])".

1

initially denied (Tr. 35-42) on October 12, 2010 because the Commissioner found Plaintiff had a severe impairment — fractures of the upper extremities — (Tr. 38) and a non-severe impairment — affective disorder — (Tr. 38) but together they were not disabling (Tr. 42). Plaintiff then filed a timely request for a hearing (Tr. 47-48) before an Administrative Law Judge (ALJ) on October 28, 2010.

The hearing took place on March 9, 2011 (Tr. 23-34); Plaintiff, represented by counsel (Tr. 23, 94) appeared and testified (Tr. 26, 28-33). Mr. John Yent, a vocational expert (VE), also testified at the hearing. (Tr. 23-24, 26-28). The ALJ rendered an unfavorable decision (Tr. 10-22) on behalf of the Commissioner on April 29, 2011 (Tr. 7-9), finding Plaintiff had "not been under a disability . . . from October 13, 2008 through the date of [the] decision" (Tr. 10). Plaintiff's request for review was denied by the Appeals Council on September 21, 2012. (Tr. 1-3). The ALJ's decision rested as the final decision when the Appeals Council denied Plaintiff's request for review. *See* 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you . . . file an action in Federal district court . . . ."). The ALJ's final decision is now ripe for review under 42 U.S.C. § 405(g).

## II.  STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g.*, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's"); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

**III.     ALJ'S DETERMINATION**

The Commissioner, through the ALJ, works through a five-step sequential evaluation process to determine disability.  *See* 20 C.F.R. § 404.1520(a)(4).  The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability.  If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process).  First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c).  At step three the ALJ must conclude the claimant is disabled if he proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments).  Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his or her past relevant work.  20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work.  20 C.F.R § 404.1520(g)(1).  If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, the ALJ initially found Plaintiff met the insured status requirements of the Act and had not engaged in substantial gainful activity from his alleged onset date of October 13, 2008.

(Tr. 12). At step two, the ALJ determined Plaintiff's "status-post crushing injuries to both hands, status-post amputation of finders of right dominant hand, ulnar neuropathy, and high blood pressure" qualified as severe impairments (Tr. 12-13), but his depression did not (Tr. 14 (citing 20 C.F.R. § 404.1520a(d)(1))). Considering the "objective evidence with the Listing of Impairments," the ALJ held Plaintiff did not have Listing level impairments at step three. (Tr. 14). The ALJ then determined Plaintiff had a Residual Functional Capacity (RFC) to "perform light work . . . except for handling, fingering, and feeling restrictions – 1/3 to 2/3 of the workdays." (Tr. 15). Based on the RFC, the ALJ found Plaintiff could no longer perform any of his past relevant work. (Tr. 16).

Before determining Plaintiff's ability to perform other types of work, the ALJ categorized Plaintiff's age, education, work experience and RFC using the Medical Vocational Guidelines (Grids) and the VE's testimony. (Tr. 16-17); *see also* 20 C.F.R. pt. 404, subpt. P, app. 2 (Medical Vocational Guidelines). Specifically, Plaintiff qualified as "a younger individual" under the Act. (Tr. 16). Plaintiff had a "limited education" and the ability to "communicate in English." (Tr. 16). The transferability of Plaintiff's previously acquired job skills was not determinable to disability. (Tr. 17). Ultimately, the ALJ found had not been under a disability from October 13, 2008 because "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 17).

## IV.  ASSIGNMENTS OF ERROR

Plaintiff assigns three errors in support of his appeal. (R. Doc. 11 at 1). First, Plaintiff argues the ALJ "improperly rejected the specific restrictions assessed by the claimant's treating orthopedic specialist without good cause and without adequate articulation of his reasoning process." (R. Doc. 11 at 3-6). Second, Plaintiff's "allegations were improperly rejected without

5

the assessment of claimant's credibility." (R. Doc. 11 at 6-8).  Finally, Plaintiff alleges the ALJ did not inform the VE of limitations that preclude the performance of light work; this "resulted" in the ALJ's reliance on inadequate VE testimony. (R. Doc. 11 at 8-10).

## V.  DISCUSSION

### A.  Analysis of Dr. Joe Morgan's Opinion

Plaintiff argues the ALJ failed to comply with 20 C.F.R. § 404.1527 by rejecting "the specific restrictions assessed by" his "treating orthopedic specialist," Dr. Joe Morgan, "without good cause and without adequate articulation of his reasoning process." (R. Doc. 11 at 3-6). Generally, the "opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *see also* 20 C.F.R. § 404.1527(c)(1) (examining physician opinion given more weight than non-examining physician). "Absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton*, 209 F.3d at 453.[2]  However, the ALJ is not required to consider each of the six factors set out in *Newton* when "there is competing first-hand medical evidence . . . ." *Walker v. Barnhart*, 158 F. App'x. 534, 535 (5th Cir. 2005) (quoting *Newton*, 209 F.3d at 458).  When the record contains medical evidence from multiple treating sources, the ALJ is "not required to go through all six steps in *Newton*" because "the ALJ is responsible for resolving conflicts in the evidence, and we will not substitute our judgment for his." *Cain v.*

---

[2] Those criteria provide that the ALJ consider: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the relevant evidence supporting the opinion; (4) consistency of the treating physician's opinion with the record as a whole; (5) whether the opinion is that of a specialist; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2).

6

*Barnhart*, 193 F. App'x. 357, 360 (5th Cir. 2006) (citing *Newton*, 209 F.3d at 452, 458; *Walker*, 158 F. App'x. at 534).

The Court agrees with Plaintiff that the ALJ did not perform the "detailed analysis" of section 404.1527(d)(2) criteria contemplated by *Newton* or assign any specific weight to Dr. Morgan's opinion. The Court, however, does not agree that the ALJ's analysis constitutes reversible error.

First, the record contains "competing first-hand medical evidence" from multiple other treating physicians, including Dr. Rick Ahmad and Dr. Sandra Weitz. *Walker*, 158 F. App'x at 535. In this instant, *Newton* does not apply and the ALJ was not required to analyze the § 404.1527 factors. The medical opinion allegedly adopted by the ALJ belonged to treating physician and hand surgeon (Tr. 293), Dr. Rick Ahmad, who performed surgery on Plaintiff's right hand (Tr. 298-299) and regularly treated his hand impairments from October 2008 through December 2009. (Tr. 246-61, 264-66, 272-92). On the other hand, the record indicates Dr. Morgan examined Plaintiff only once on June 29, 2009 (Tr. 220-232) to provide a second opinion of Dr. Rick Ahmad's diagnosis of "Guyon's Canal Syndrom." (Tr. 370, 373).[3] Even assuming Dr. Morgan qualifies as treating physician,[4] the ALJ could credit the opinion of any of Plaintiff's treating sources. No *Newton* error occurred. *See Miliam v. Bowen*, 782 F.2d 1284 (5th Cir. 1986) (where the record contained reports from two treating physicians, the ALJ could credit the opinion of either).

---

[3] It is questionable whether Dr. Morgan even qualifies as a treating source. This issue, however, is not raised by either party.

[4] A physician qualifies as a treating source "if the claimant sees the physician 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition(s).'" *Huet v. Astrue*, 375 F. App'x 373, 376 (5th Cir. 2010) (quoting 20 C.F.R. § 404.1502) (alteration in original); *see also Giles v. Astrue*, 433 F. App'x 241, 246 (5th Cir. 2011) ("Disability cases typically involve three types of physicians," including "a treating physician who regularly provides care to the claimant" and "an examining physician who conducts a one-time physical exam of the claimant.").

7

Second, any error in the ALJ's failure to assign a particular weight to Dr. Morgan's opinion was harmless because Morgan's opinion is consistent with the RFC determination. Plaintiff suggests the RFC is deficient because it exceeds the limitations described by Dr. Morgan on June 29, 2009. (R. Doc. 11 at 4; Tr. 220-232). According to Plaintiff, Dr. Morgan indicated reduced range of motion in the right thumb and that grip strength testing "yielded significant deficits in pinch testing with strength limited to 17 pounds on the left and 9 pounds on the right." (R. Doc. 11 at 4 (citing Tr. 228)). But this summary of Dr. Morgan's findings is incomplete. Dr. Morgan's *complete* findings of Plaintiff's grip strength are consistent with the RFC — light work that limits the amount of handling, fingering and feeling restricted to 1/3 to 2/3 of the workday.

Plaintiff refers only to his right and left "pinch" strength; he excludes the majority of Dr. Morgan's "Grip Testing," which first measured his overall left and right hand grip strength at each of five settings. (Tr. 228). At settings one through five, Plaintiff's left grip strength measured 15, 35, 30, 30 and 25 pounds, respectively. The grip strength of Plaintiff's right hand measured 20, 30, 20, 20 and 15 pounds, respectively. (Tr. 228). These results are consistent with light work and Plaintiff makes no argument that "pinch testing" is a more accurate measure of his functional abilities than "grip testing." Additionally, as mentioned in the ALJ's summary of Dr. Morgan's records, Morgan indicated that "all fingers" on the right hand "have complete range of motion to include the right IP joint of the thumb." (Tr. 13, 227). These findings are consistent with the lifting demands of light work — 10 pounds frequently and 20 pounds occasionally — and the limitations in fine manipulation incorporated into the RFC. *See Chambers v. Astrue*, No. 09-643, 2011 WL 1103421, at *9 (M.D. Fla. March 24, 2011) ("the

8

ALJ's failure to assign weight to Dr. Galang's opinion was harmless error because his opinion and findings are entirely consistent with the ALJ's 'RFC' and credibility determinations").

      **B.**      **Credibility**

Plaintiff argues the ALJ committed reversible error when assessing his credibility. (R. Doc. 11 at 6-8). The ALJ "does not offer any explanation" for discounting his credibility, as required by Social Security Ruling 96-7P. (R. Doc. 11 at 7) (citing SSR 96-7P, 1996 WL 374186 (July 2, 1996)). Plaintiff further suggests the "record contains no evidence to suggest malingering, exaggeration or any other indication that the claimant [sic] statements deserve less than full credibility." (R. Doc. 11 at 7). The Court's review of the decision and administrative records does not support these allegations.

The Administration requires the decision to "contain specific reasons for the finding on credibility, supported by the evidence in the case record." SSR 96-7P, 1996 WL 374186, at *4 (July 2, 1996). At the same time, "[p]rocedural perfection in administrative proceedings is not required" and remand will not be warranted "unless the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). Failing to articulate specific reasons for discounting a claimant's credibility obviously results in some error. Nonetheless, that error is harmless where (1) the ALJ discusses the claimant's allegations and (2) substantial record evidence supports the credibility determination. *See, e.g.*, *Haywood v. Sullivan*, 888 F.2d 1463, 1469-70 (5th Cir. 1989) (failure to explain credibility findings was harmless error where decision summarized claimant's testimony and objective medical evidence and substantial evidence supported finding); *Story v. Astrue*, 294 F. App'x 883, 884 (5th Cir. 2008) (ALJ's consideration of subjective testimony "satisfied his obligation" to make specific credibility findings); *Salgado v. Astrue*, 271 F. App'x 456, 462-63 (5th Cir. 2008) (ALJ's previous

9

discussion of claimant's allegations provided sufficient reasons for otherwise conclusory credibility finding). Both requirements are clearly met here.

First, the ALJ fully discussed Plaintiff's subjective testimony of his limitations, daily activities, symptoms and pain. (Tr. 12-13, 26, 28-33). Next, the ALJ summarized the objective medical evidence contained in the record. (Tr. 13-14). He later explained that his review of Plaintiff's allegations and the entire record lead to the conclusion that Plaintiff "does suffer with pain," but not to the extent alleged. (Tr. 16). The ALJ's claim to have considered claimant's testimony is corroborated by his incorporation of Plaintiff's allegedly limited ability to do repetitive hand movements (Tr. 32-33) into the hypotheticals posed to the VE (Tr. 27) and ultimately into the RFC (Tr. 15). Clearly, the ALJ satisfied his obligation to consider Plaintiff's alleged symptoms. *See Herron v. Halter*, 250 F.3d 744 (5th Cir. 2001) (unpublished table decision) (lack of specific findings was harmless error where ALJ detailed claimant's testimony and record evidence earlier in opinion and said testimony and record were considered at credibility stage).

While the Court concedes that the ALJ should have articulated specific inconsistencies between the record and Plaintiff's allegations — it certainly would have been helpful — that error was harmless because substantial evidence supports the credibility and RFC findings. The ALJ decided Plaintiff's limitations were consistent with light work that only required "handling, fingering, and feeling . . . 1/3 to 2/3 of the workdays." (Tr. 15). Plaintiff does not argue that any testimony or evidence undermines the ALJ's credibility or RFC findings, other than Dr. Morgan's assessment of grip strength and range of motion in the right thumb and the alleged side effects of his pain medication — drowsiness which causes him to sleep for 3 hours. (R. Doc. 11

10

at 6-7, 8 n.4; Tr. 31-32). Despite Plaintiff's argument, neither allegation finds support in the record.

The Court has already considered the complete results of Dr. Morgan's grip strength test and found them consistent with the lifting requirements of light work. Dr. Morgan noted that Plaintiff claimed he could only lift 7 pounds. (Tr. 224). Still this statement is not Dr. Morgan's opinion and Dr. Morgan did not place any exertional limitations on Plaintiff. Likewise, Dr. Morgan's June 29, 2009 opinion that Plaintiff showed "all fingers" on the right hand had "complete range of motion to include the right IP joint of the thumb" is consistent with the RFC's restrictions in fine manipulation. (Tr. 17, 227). The Medical records from Plaintiff's treating and examining physicians are also consistent with Dr. Morgan's findings and further support the credibility and RFC determinations.

Between 2008 and 2010, Plaintiff's physicians consistently state he exhibited normal grip strength in the right and left hands. Treating physician Dr. Sandra Weitz's records indicate normal to full grip strength on February 5, 2010 (Tr. 364), June 29, 2010 (Tr. 358), July 28, 2010 (Tr. 303) and November 9, 2010 (Tr. 353). In early 2010, Dr. Weitz, who treated Plaintiff monthly during 2010 through 2011, reviewed a Functional Capacity Evaluation (FCE) of Plaintiff. (Tr. 311). The FCE determined Plaintiff had a "light to low medium physical demand capacity." (Tr. 311).[5] On December 2, 2008, just two months after undergoing hand surgery (Tr. 204-06), Plaintiff's surgeon Dr. Craig C. Greene reported he showed "good" grip strength in his right hand. (Tr. 293). On January 13, 2009, before his second hand surgery on September 25, 2009 (Tr. 298-99), hand surgeon Dr. Rick Ahmad felt he could return to work but lift no more than 10 pounds (Tr. 288). After his second surgery, on November 5, 2009, Dr. Ahmad found "intrinsic functioning is strong in both hands." (Tr. 370).

---

[5] This FCE does not appear in the administrative record.

11

The record is likewise inconsistent with the limited range of motion in the right hand and thumb alleged by Plaintiff. Dr. Greene indicated near full range of motion in Plaintiff's right fingers and hand on November 3, 2008 (Tr. 294) and that motion had improved by December 2, 2008. (Tr. 293). According to Dr. Ahmad, Plaintiff's hand surgeon and treating physician, he demonstrated full range of motion in the right hand and/or thumb on December 11, 2008 (Tr. 265) (full flexion and extension of right fingers and full range of motion right hand), January 13, 2009 (Tr. 288) (same), February 12, 2009 (Tr. 287), May 5, 2009 (Tr. 282) ("excellent motion"), September 1, 2009 (Tr. 373) ("normal motion in his right hand"), October 8, 2009 (Tr. 371) ("full motion") and November 5, 2009 (Tr. 248) (same).

On December 10, 2009, Dr. Ahmad examined Plaintiff's hands and assigned him an impairment rating based on the motion in his hands and the amputation of his left small finger using the American Medical Association's Guides (Tr. 272). *See* Am. Med. Assoc., *Guides to the Evaluation of Permanent Impairment* (6th ed. 2007). The physical exam showed: "He has 60 degrees of palmar and radial abduction in the right basilar thumb joint. He can oppose his thumb within 3 cm. of the midline of the fifth ray. He can elevate his thumb 5 cm. away from his palm. He has full IP and MP motion in his right thumb." (Tr. 272). Using the AMA Guides — which also instruct Administration in measuring "joint motion"[6] — Dr. Ahmad found Plaintiff had a "28% impairment of the right thumb which equates to 11% impairment of the right hand" and "a 10% impairment of his left hand . . . . Combined that equates to a 9% impairment of the whole person." (Tr. 272).

The ALJ appropriately considered Dr. Ahmad's opinion of Plaintiff's limitations. Dr. Ahmad treated Plaintiff continuously for over a year (Tr. 246-61, 264-66, 272-92) and performed

---

[6] 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00G ("Measurements of joint motion are based on the techniques described in the chapter on the extremities, spine, and pelvis in the current edition of the 'Guides to the Evaluation of Permanent Impairment' published by the American Medical Association.").

surgery on his right hand (Tr. 298-99). His opinion of Plaintiff's limitations imposed by his right hand is consistent with those described by Dr. Weitz (Tr. 303, 353, 358, 364), Dr. Greene (Tr. 293, 294) and Dr. Morgan (Tr. 227-28). Finally his method for testing the range of motion in Plaintiff's thumb is one recognized by the Administration as instructive. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00G.

Likewise, none of Plaintiff's physicians placed repetitive movement or fine manipulation restrictions on either hand or found him disabled. Rather, Dr. Weitz consistently urged Plaintiff to return to work (Tr. 303, 307, 308, 309, 310, 311, 314) beginning in January of 2010 (Tr. 314). Her January 7, 2010 records indicate: "I think the real battle here is going to be trying to get this gentleman to see that he is certainly capable of performing some level of work . . . ." (Tr. 314). In February of 2010, she advised Plaintiff to get back to work – "sooner rather than later." (Tr. 311). On March 4, 2010, Dr. Weitz again indicated Plaintiff "needs to return to work" and emphasized that he "[r]eally needs to find a job." (Tr. 310). Plaintiff advised Dr. Weitz on April 5, 2010 that he was trying to find work. (Tr. 309). She counseled Plaintiff that the "sooner he gets back to work the better he will be." (Tr. 309). In May of 2010, Plaintiff told Dr. Weitz that he was interested in starting his own business. (Tr. 308). On June 1, 2010, Dr. Weitz provided Plaintiff with a copy of the FCE and reiterated that "he is released to work according to the FCE results, which places him a [sic] light–to–low medical physical demand level. He understands." (Tr. 307). In July of 2010, Dr. Weitz's records state Plaintiff "is motivated to return to work; however, he thinks no one will hire him." (Tr. 303). As such, the record clearly supports the ALJ's credibility and RFC findings and not Plaintiff's alleged severity of limitations.

Next, Plaintiff testified that his pain medication prevents him from engaging in substantial gainful activity because it causes him to sleep and/or lie down for at least 3 hours a

13

day. (Tr. 31-32). This allegation is more than unsupported by the record, it is contradicted. Throughout his treatment, Plaintiff consistently told his treating physicians that he did not experience any side effects from his pain medication. (Tr. 311) (Dr. Weitz on Feb. 5, 2010 – no side effects from Lortab); (Tr. 307) (Dr. Weitz on June 1, 2010 – denies side effects from Lortab); (Tr. 303) (Dr. Weitz on July 28, 2010 – "taking 3 tablets of Lortab . . . denies any cognitive or opioid-related side effect"); (Tr. 357) (Dr. Weitz on Sept. 14, 2010 – no side effects); (Tr. 355) (Dr. Weitz on Oct. 12, 2010 – no side effects); (Tr. 350) (Dr. Weitz on Jan. 5, 2011 – no side effects); (Tr. 348) (Dr. Weitz on Feb. 2, 2011 – no side effects). The Court has not found and Plaintiff does not cite to any indication of these side effects before the hearing. Plaintiff further reported to his doctors that his medications were effective in alleviating pain. (Tr. 302, 303, 307, 308, 309, 310, 348, 350, 351, 353, 355).

      Contrary to Plaintiff's allegations, there is substantial record evidence to support the ALJ's RFC and credibility findings. The ALJ also thoroughly discussed (Tr. 12-13) Plaintiff's allegation and did not ignore Dr. Morgan's medical opinion and findings, as Plaintiff suggests. Instead, the ALJ summarized Dr. Morgan's opinion, including his assessment of Plaintiff's range of motion in his left and right hands. (Tr. 13, 227). The ALJ also discussed (Tr. 13-14) the opinions of Plaintiff's other treating physicians, Drs. Craig C. Greene (Tr. 194-206, 267-68), Rick Ahmad (Tr. 246-61, 264-66, 272-92) and Sandra Weitz (Tr. 300-16, 347-68). As such, there is no support for Plaintiff's arguments. Because there is substantial record evidence that supports the credibility and RFC determinations, remand is not required despite the ALJ's failure to make specific credibility findings. *See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (ALJ's procedural imperfection does not require remand unless it affects claimant's substantial rights).

### C. Vocational Expert

Plaintiff finally argues that the ALJ's questions to the vocational expert are unreliable because they were based on incorrect credibility and RFC assessments. The Court has already determined the ALJ made sound credibility and RFC assessments. Considering that all limitations recognized by the ALJ were properly incorporated into his hypotheticals to the VE, there was no error in the ALJ's reliance on the VE's testimony. *See, e.g.*, *Masterson v. Barnhart*, 309 F.3d 267, 273-74 (5th Cir. 2002) (rejecting argument that ALJ relied on VE's answers to "improper hypothetical questions" because hypotheticals incorporated all impairments recognized by ALJ and court found ALJ's decision supported by substantial evidence).

## VI. CONCLUSION

For the reasons discussed above, the Court **RECOMMENDS** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's appeal be **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on February 7, 2014.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**